## 45758.   ANDERSON v. BLACKMON.

ARGUED NOVEMBER 3, 1970—DECIDED DECEMBER 3, 1970—
REHEARING DENIED DECEMBER 17, 1970—CERT. APPLIED FOR.

*Thompson & Benken, Louis A. Thompson,* for appellant.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, William L. Harper, Timothy J. Sweeney, Assistant Attorneys General,* for appellee.

HALL, Presiding Judge. The sole issue is whether the ten-day notice to produce records and to appear before the Commissioner, as provided in *Code Ann.* § 92-3432a, is a condition precedent to a legal assessment. The pertinent parts of the section read as follows: "If any dealer subject to make and file a return required by any provision of this Chapter fails to render such return within the time required or renders a return which is false or fraudulent . . . the Commissioner shall give such dealer 10 days' notice in writing requiring such dealer to appear before him or his assistant with such books, records, and papers as he may require relating to the business of such dealer for such taxable period; and said Commissioner may require such dealer or the agents and employees of such dealer to give testimony or to answer interrogatories under oath. . . If any dealer fails to make any such return or refuses to permit an examination of his, the dealer's books, records or papers, or to appear and answer questions within the scope

of such investigation . . . the Commissioner is hereby authorized to make an assessment based upon such information as may be available to him and to issue a fi. fa. for the collection. . ."

The taxpayer contends he has a right to, and the Commissioner has a duty to give, this formal notice and hearing, and only after full compliance with this procedure may an assessment be made. He contends that the assessment against him is void since he was not afforded this notice and hearing. He cites a 1955 opinion of the Attorney General which supports this position. Ops. Att'y Gen. 1954-56, p. 833.

The Commissioner contends that *Code Ann.* § 92-3432a does not provide an adversarial hearing for the benefit of the taxpayer but rather it provides to the Commissioner an investigatory power and procedure to compel an unco-operative dealer to disclose his records. He further contends that it has no application in this particular factual situation since the taxpayer had already made all the records he claimed to possess available to the unit's field representatives at his place of business; that only after determining these records were inaccurate and unreliable did they resort to other sources and methods to compute the correct tax liability; that these were discussed fully with the taxpayer who offered no additional records or explanation; and that a subsequent order to produce these records at a hearing would not only be of no value to anyone concerned, but would be subject to challenge as an unnecessary disruption of the taxpayer's business under the rationale of *Dickerson v. Mangham,* 194 Ga. 466 (22 SE2d 88).

This is the first time this issue has been presented to the Georgia courts. However, the Supreme Court of Tennessee held that an identically worded provision in their Sales Tax Act was an "extraordinary remedy" and "for the benefit of the Commissioner"; and that the notice and hearing provided therein was not a prerequisite to an assessment because (1) enforcement of the Act would be practically impossible if the procedure were mandatory in every case and (2) other provisions of the Act empower the Commissioner to make an assessment with no mention of a hearing. Alford v. Butler, 211 Tenn. 663 (367 SW2d 281).

We believe the same reasoning applies here. *Code Ann.* § 92-3427a places a duty on the Commissioner to make an estimate,

assess and collect the tax when a dealer either fails to make a return or makes a grossly incorrect, false or fraudulent return. No mention is made of a hearing. The next four sections concern mandatory record keeping by those businesses subject to the Act. *Code Ann.* § 92-3431a (which immediately precedes the section at issue here) requires a dealer to hold his records open for inspection by the Commissioner at his place of business at any reasonable time. It is logical that only when a dealer refuses to allow on-site examination of his records (the most expeditious and least disruptive way to conduct an audit) that the Commissioner needs to invoke the formal notice to produce (or to subpoena employees) in order to gain information from which he can make a reasonably accurate assessment. Finally, this section authorizes the Commissioner to make an assessment "based upon such information as may be available to him" when a dealer has refused to permit examination of his books or to appear and answer questions.

The whole thrust of this section is to authorize the Commissioner to make an assessment based upon whatever outside information he can locate when he does not have the benefit of the *best source,* the taxpayer's own records, because the taxpayer has refused to permit examination of his books and/or answer questions, first at his place of business, then after a formal notice. In other words, the section sets out the procedures which must be exhausted before the Commissioner can make an assessment without regard to the taxpayer's records. It does *not* require a useless notice and hearing when the dealer has voluntarily opened his records to the field auditors, they have been found insufficient, and the Commissioner has, with the taxpayer's knowledge, resorted to additional sources of information to compute the tax liability.

The taxpayer's contention that the Commissioner is bound by his own regulations which require this 10-day notice is without merit. One regulation he cites merely sets out the form and procedures for giving the notice if the § 92-3432a process is invoked. It does not make the process mandatory. The other regulation cited concerns the procedures surrounding a taxpayer's request for a conference prior to an assessment. It is a completely different proceeding from that in issue here.

The trial court did not err in denying the motion for summary

judgment.

*Judgment affirmed. Deen, J., concurs. Evans, J., concurs specially.*

EVANS, Judge, concurring specially. I concur in the judgment of affirmance only, and not in all that is said in the opinion. I do not agree that § 18 of the Retailers and Consumers Sales and Use Tax Act (Ga. L. 1951, pp. 360, 380) is an extraordinary remedy solely for the benefit of the Commissioner. Under the facts of this case it is shown that the taxpayer had failed to keep records of individual sales, cash register tapes, sales journals of the sales, and daily records. The taxpayer made a voluntary disclosure to the Commissioner of all records kept by him. The taxpayer had prepared his return by the use of bank deposits as a record of gross sales. After making an audit of the taxpayer's purchases, the Commissioner felt that the records and documents furnished by the taxpayer were inaccurate, and insufficient to verify the correctness of the Sales and Use Tax return of the business. The Commissioner made his assessment based upon a purchase plus mark-up method, using the records of the Alcohol Control Unit as to the sales to the taxpayer as the basis for computing liquor purchases. The Commissioner likewise obtained records from beer distributors of their sales to the taxpayer, and these records were used as a basis for computing beer purchases. Thus there appeared to be no necessity for the filing of the 10-day notice to produce records since the taxpayer had voluntarily assisted the agents of the Commissioner in the audit. It is my opinion that an issue of fact remains, based upon whether or not the taxpayer's liability as computed by the Commissioner properly reflects the taxes due, or whether the bank deposits of sales which were used in preparing the Sales and Use Tax return by the taxpayer are correct. Both parties are entitled upon a trial of this issue to offer any and all evidence available to prove their respective claims as to the tax liability. The mere fact that the taxpayer failed to keep the proper records as to individual sales does not, per se, prove him guilty of fraud so as to authorize the Commissioner's method of determining the tax to be absolutely correct. A jury might consider all the facts and make a determination upon the facts different from both the taxpayer's method and the Commissioner's

method since neither relies upon the individual sales of the tax-payer.